Gilbert McCLENDON; Bernadine F. McClendon; Norman McDanel; Connie R. McDanel, Plaintiffs–Appellants,

v.

UNITED STATES of America; Colorado River Indian Tribal Council, Defendants–Appellees.

No. 88–5981.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1989.

Decided Sept. 15, 1989.

Richard A. Del Guercio, Los Angeles, Cal., for plaintiffs-appellants.

John P. Lange, Denver, Colo., for U.S. of America.

Alletta d'A Belin, San Francisco, Cal., for Colorado River Indian Tribal Council.

Before FLETCHER and NELSON, Circuit Judges, and PRO,* District Judge.

* Hon. Philip M. Pro, United States District Judge for the District of Nevada, sitting by designa-

FLETCHER, Circuit Judge:

Appellants Gilbert and Bernadine McClendon and Norman and Connie McDanel (collectively, "McClendon") brought an action in U.S. District Court against the United States and the Colorado River Indian Tribal Council ("Tribe"), alleging that the Tribe breached the terms of a lease agreement. The district court dismissed the action for lack of subject matter jurisdiction. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

The lease agreement at issue in this case has its origins in a dispute over ownership of certain lands claimed on behalf of the Tribe. In 1972, the United States filed a complaint for ejectment against McClendon's predecessors-in-interest, Robert and Laura Clark. In that suit, the U.S. sought to establish permanent title, in trust for the Tribe, to certain lands in Riverside County, California. The Tribe and McClendon were not parties to the initial suit.

In 1974, the parties agreed to settle the case. According to McClendon, the settlement consisted of two key provisions: (1) the U.S. and the Tribe would obtain undisputed title to the lands; and (2) the Clarks would obtain a long-term lease of the lands at a favorable rental rate. McClendon claims that the lease permitted partial assignment of the Clarks' leasehold interest, as well as commercial/recreational use of portions of the property.

Having been informed of the agreement to settle, the district court dismissed the action with prejudice by order dated October 25, 1974. However, the parties took over two years to formulate the written settlement agreement. On April 13, 1977, a "Stipulation for Entry of Judgment and Filing of Findings of Fact and Conclusions of Law" was filed with the court. The stipulation included proposed findings of

tion.

fact which reiterated that the U.S. owned in trust for the Tribe the land described therein. This document served as the basis for the district court's final judgment and accompanying findings of fact and conclusions of law. The lease between the Clarks and the Tribe was not mentioned in these documents.

In 1984, the Clarks assigned a portion of their leasehold interest to McClendon. Following this assignment, McClendon signed a business lease with the Tribe governing this property. The terms of this 1984 lease were basically identical to the terms of the earlier Clark lease. McClendon then applied for, and received from the Tribe, various permits to construct a mobile home park. According to McClendon, during the course of construction the Tribe withdrew the previously issued permits and demanded submission of new development plans. McClendon also alleges that during the course of review of the new plans, the Tribe sought to increase the rent fixed by the lease, and to compel McClendon to abandon the mobile home project.

McClendon then brought this action, seeking damages, a declaration that the Tribe's actions constitute a breach of the lease agreement, and injunctive relief. The district court dismissed the action for lack of subject matter jurisdiction on the basis of tribal sovereign immunity. It rejected McClendon's argument that sovereign immunity was waived through participation in the stipulated judgment entered into in settlement of the Clark lawsuit. It also noted that the stipulated judgment and accompanying findings contained no express reservation of district court jurisdiction over the lease, and that there is in these documents no reference of any sort to the Clark lease. Finally, the court found that the lease,

itself, contains no waiver of sovereign immunity and that, in fact, the Clark lease documents were drafted specifically to avoid such waiver. McClendon filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's conclusion that it lacks subject matter jurisdiction over this action. *Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).

## II.

## JURISDICTION OVER THE TRIBE

### A. Tribal Sovereign Immunity

Because they are sovereign entities, Indian tribes are immune from unconsented suit in state or federal court. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *Chemehuevi Indian Tribe v. California State Bd. of Equalization*, 757 F.2d 1047, 1050 (9th Cir.), *rev'd on other grounds*, 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985); *United States v. Oregon*, 657 F.2d 1009, 1012 (9th Cir.1981). Indian tribes can waive their sovereign immunity. *Id.* at 1013. However, such waiver may not be implied, but must be expressed unequivocally. *Martinez*, 436 U.S. at 58, 98 S.Ct. at 1677. The issue of tribal sovereign immunity is jurisdictional in nature. *Chemehuevi*, 757 F.2d at 1051; *Puyallup Tribe, Inc. v. Washington Dep't of Game*, 433 U.S. 165, 172, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977).

McClendon asserts that the Tribe waived its sovereign immunity by initiating the 1972 suit against the Clarks.[1] Stated another way, McClendon claims that "[i]f the District Court had subject matter jurisdiction to adjudicate the rights of the United

---

1. The Tribe contends that this argument has no merit because it was not formally a party to the 1972 action, which was brought by the United States in its capacity as trustee. According to the Tribe, it cannot be deemed to have waived its immunity by virtue of the initiation of a suit to which it was not even a party. Citing *Heckman v. United States*, 224 U.S. 413, 444–46, 32 S.Ct. 424, 434–35, 56 L.Ed. 820 (1912), McClendon contends that the Tribe was bound by the outcome of the suit brought on its behalf, and

that initiation of the suit therefore necessarily constituted waiver of tribal sovereign immunity with respect to issues arising from that suit. For purposes of this opinion, we assume, without deciding, that initiation of the 1972 litigation by the United States could result in waiver of tribal sovereign immunity despite the fact that the Tribe was not formally a party to the action. Thus, throughout this opinion, we will characterize the 1972 suit as one initiated by the Tribe.

States as trustee and the Tribe as beneficiary to the claimed tribal lands occupied by the Clarks, then sovereign immunity of the United States and the Tribe is not an impediment to enforcement of Appellants' rights under the agreement settling the litigation." Appellants' Reply Brief at 6.

■ Initiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy. By initiating the 1972 action, the Tribe accepted the risk that it would be bound by an adverse determination of ownership of the disputed land. However, the "terms of [a sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Jicarilla Apache Tribe v. Hodel,* 821 F.2d 537, 539 (10th Cir.1987) (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). Thus, a tribe's waiver of sovereign immunity may be limited to the issues necessary to decide the action brought by the tribe; the waiver is not necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts.

■ *Jicarilla Tribe* is instructive in this regard. The Jicarilla Tribe brought suit to cancel certain oil and gas leases on reservation lands awarded by the Department of the Interior. While that suit was pending, Dome Petroleum Corporation brought an independent action seeking to pay adjusted bonuses to preserve its interest in certain of these leases. The district court dismissed Dome's suit for lack of jurisdiction over the Jicarilla Tribe, and the court of appeals affirmed, noting:

Although the Tribe's filing of the *Jicarilla* litigation may have waived its immunity with regard to Dome's intervention in that suit, *we cannot construe the act of filing that suit as a sufficiently unequivocal expression of waiver in subsequent actions relating to the same leases* .... Waiver of immunity in the present action was not one of the terms of the Tribe's initial suit; it therefore

cannot be made a party to this subsequent litigation.

*Jicarilla Tribe,* 821 F.2d at 539–40 (emphasis added). Thus, *Jicarilla Tribe* indicates that tribal initiation of litigation alone does not establish waiver with respect to related matters. The dispute over the lease agreement in this case is no more closely linked with the Tribe's underlying suit than was Dome's action to the Jicarilla Tribe's lease cancellation suit.

Similarly, we consistently have held that a tribe's participation in litigation does not constitute consent to counterclaims asserted by the defendants in those actions. *See, e.g., Squaxin Indian Tribe v. Washington,* 781 F.2d 715, 723 (9th Cir.1986) (neither tribe's initiation of suit for injunctive relief, nor tribe's continued sale of liquor while preliminary injunction in force, constituted waiver of sovereign immunity with respect to state's counterclaim for taxes allegedly due); *Chemehuevi,* 757 F.2d at 1053 (tribe's initiation of a suit for declaratory and injunctive relief against enforcement of California's cigarette tax as applied to tribal sales to non-Indian purchasers did not constitute waiver of the tribe's sovereign immunity with respect to California's counterclaim for taxes allegedly due). *But see United States v. Oregon,* 657 F.2d at 1014–16 (tribe's intervention to establish fishing rights constituted consent to district court's jurisdiction to issue and modify equitable decree which encompassed the tribe's rights). These cases are consistent with the conclusion in *Jicarilla Tribe* that a tribe's consent to suit through initiation of litigation may be limited in scope.

McClendon argues that the 1972 suit constituted a waiver of immunity against actions to enforce the terms of the lease agreement. McClendon relies particularly upon the rationale of *United States v. Oregon,* 657 F.2d at 1009, in which we held that an Indian tribe had manifested its consent to suit by intervening as a plaintiff in a suit brought by the United States against Oregon to establish the fishing rights of Indian tribes occupying the Columbia River basin.[2] In that case, the dis-

2. We also held in *United States v. Oregon* that the Tribe explicitly agreed to submit disputes

trict court ruled in favor of the plaintiffs on the merits. As part of the equitable remedy fashioned by the court, it established a procedure for promulgating future fishing regulations, and retained jurisdiction to expedite enforcement of its decree.

Eleven years after initial judgment was entered, the state of Washington applied to the district court for an injunction against tribal fishing of spring chinook. The court granted the injunction and the Tribe appealed, contending, *inter alia*, that Washington's suit was barred by sovereign immunity. This court rejected that argument, affirming the district court.

First, we noted that the initial action was analogous to an action *in rem*,[3] with the fishery constructively in possession of the court. We stated that "[b]y seeking equity, this Tribe assumed the risk that any equitable judgment secured could be modified if warranted by changed circumstances." *Id.* at 1015. We then concluded:

> Here, Washington alleged that the very resource sought to be protected, the anadromous fishery, was in jeopardy. Since the existence of the salmon was inextricably linked to the res in the court's constructive custody, the court was empowered to enjoin interference with that custody.

*Id.* at 1016.

The rationale of *United States v. Oregon* does not extend to this case. The 1972 action merely sought a declaration of land ownership. Unlike the initial action in *United States v. Oregon,* no ongoing eq-uitable remedy was necessary; there was no *res* over which the district court had to maintain control in order to do equity.[4] By initiating the 1972 action, the Tribe merely consented to the court's jurisdiction to decide ownership of the land in question. The initiation of the suit, in itself, does not manifest broad consent to suit over collateral issues arising out of the settlement of the litigation, such as interpretation or enforcement of the lease agreement. *See Jicarilla Tribe,* 821 F.2d at 539–40. We conclude that disputes over interpretation of the 1984 lease agreement are collateral disputes, and are not so inextricably linked with the 1972 suit that initiation of the latter, in itself, constitutes consent to suit over the former.

McClendon argues that allowing the Tribe to sue without exposing itself to suit for subsequent related matters is unfair. However, as the Supreme Court has noted, "[t]he perceived inequity of permitting the Tribe to recover from a non-Indian for civil wrongs in instances where a non-Indian allegedly may not recover against the Tribe simply must be accepted in view of the overriding federal and tribal interests in these circumstances." *Three Affiliated Tribes v. Wold Eng'g,* 476 U.S. 877, 893, 106 S.Ct. 2305, 2314, 90 L.Ed.2d 881 (1986). Moreover, "[t]ribes and persons dealing with them long have known how to waive sovereign immunity when they so wish." *American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1379 (8th Cir.1985).

over the management of the fishery to the U.S. District Court. 657 F.2d at 1016. However, this second rationale clearly was independent of the first. *Id.* at 1014. Thus, *United States v. Oregon* must be viewed as establishing that Indian tribes may, in certain circumstances, consent to suit by participation in litigation.

**3.** "The original action, by seeking a declaration of treaty fishing rights, sought to apportion the Columbia River anadromous fishery among competing sovereigns. It thus has been recognized as analogous to an equitable action *in rem.*" *United States v. Oregon,* 657 F.2d at 1015.

**4.** Characterizing the Clarks' leasehold interest as part of the bundle of rights in the disputed land, McClendon argues that the *in rem* analogy is appropriate here. We conclude that this analogy cannot be stretched so far. The nature of the dispute in *United States v. Oregon* was such that the district court would be apportioning a scarce resource. This was foreseeable when the Tribe intervened in the original suit. *Id.* at 1015 (rejecting the Tribe's argument that by entering the suit, it was entitled either to an injunction or no relief at all). The 1972 Clark suit merely required the district court to decide the legal question whether the Tribes or the Clarks owned the property. Thus, the Clark case was precisely the type of traditional private litigation that the *United States v. Oregon* case was not. The fact that the Tribe and McClendon ultimately entered into a settlement compromise that divided the property interests in a more complex fashion does not change the nature of the 1972 suit.

McClendon could have negotiated a term in the lease agreement governing consent to suit. Given that courts consistently have required express and unequivocal waiver of sovereign immunity, if McClendon failed to negotiate such a waiver, considerations of equity are not in McClendon's favor.

■ Although we hold that initiation of the 1972 Clark litigation does not, in itself, constitute waiver of sovereign immunity with respect to this action, our inquiry does not end there. We must also determine whether the Tribe consented to this suit in the settlement documents filed with the district court, the Clark lease, or the McClendon lease. We conclude that nothing in any of these documents manifests the Tribe's consent to suit over disputes involving interpretation of the lease provisions.

Nothing in the settlement documents presented to the district court indicates an intent to waive sovereign immunity with respect to any further disputes arising between the Tribe and the Clarks or their successors-in-interest. Moreover, the leases themselves contain no provision governing sovereign immunity or consent to suit. Thus, the second rationale for finding waiver of sovereign immunity in *United States v. Oregon*, 657 F.2d at 1016, also has no application to this case.[5]

Not only are the relevant documents in this case silent with respect to the Tribe's consent to suit, but the Tribe presented evidence to the district court indicating that certain language in an early draft of the Clark lease which could possibly have been read as a waiver of sovereign immunity was deleted from the lease. After the Tribe's attorneys discovered this language, it was removed, and the redrafted language was incorporated into the lease executed by the Clarks and the Tribe. Thus, as the district court noted, the possibility of waiver of sovereign immunity was expressly contemplated, and rejected, by the Tribe. There was no consent to suit over the terms of the Clark lease, or the later McClendon lease.

## B. Inherent Jurisdiction Analysis Does Not Change the Result

■ McClendon argues vigorously that the district court has inherent jurisdiction to enforce the terms of the lease because these terms were an integral part of the agreement settling the original litigation brought before the district court. *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).[6] Alternatively, McClendon argues that the dis-

---

5. The settlement agreement in that case contained a clause stating that

> [i]n the event that significant management problems arise from this agreement that cannot be resolved by mutual agreement, *the parties agree to submit the issues to federal court for determination.* In any event, the Court shall retain jurisdiction over the case of *U.S. v. Oregon*, Civil 68–513 (D.C.Or.).

*Id.* at 1016 (emphasis added). As we noted earlier, such a provision could have been negotiated in this case, but it was not.

6. McClendon acknowledges that the circuits are split over whether such inherent jurisdiction exists. The Fourth Circuit has held that it does not. *See Fairfax Countywide Citizens Ass'n v. County of Fairfax*, 571 F.2d 1299, 1304–06 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978) (while a district court has authority under Fed.R.Civ.P. 60(b)(6) to vacate a prior dismissal order for breach of the settlement agreement, no inherent jurisdiction exists to enforce the terms of the agreement). The Seventh Circuit also has rejected the Sixth Cir-

cuit view. *See McCall–Bey v. Franzen*, 777 F.2d 1178, 1190 (7th Cir.1985) (no jurisdiction to enforce settlement agreement unless such jurisdiction is specifically retained by the district court). Several other courts also have weighed in on this issue. *See, e.g., Adduono v. World Hockey Ass'n*, 824 F.2d 617, 623 (8th Cir.1987) (suggesting that there is no inherent jurisdiction to enforce a settlement agreement where the district court failed to incorporate the agreement into the dismissal order, or otherwise manifest intent to retain jurisdiction); *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137, 142 (5th Cir.), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3536, 87 L.Ed.2d 660 (1985) (suggesting that *Fairfax* is inconsistent with Fifth Circuit precedent); *Village of Kaktovik v. Watt*, 689 F.2d 222, 232 n. 76 (D.C.Cir.1982) (citing *Fairfax*, and indicating that there is no inherent jurisdiction to enforce a settlement agreement not made part of the dismissal order). *See generally* Note, Federal Jurisdiction to Enforce a Settlement Agreement After Vacating a Dismissal Order Under Rule 60(b)(6), 10 *Cardozo L.Rev.* 2137 (1989).

trict court retained jurisdiction under the more restrictive standard set out in *McCall–Bey*, 777 F.2d at 1190. However, these issues are largely beside the point. None of the cases cited by McClendon involve assertions of sovereign immunity from suit. Because of its immunity, if the Tribe did not consent to suit through initiation of the initial litigation, the stipulated dismissal or other settlement agreement documents, or through language in the Clark lease or McClendon lease, there can be no jurisdiction over this action. We have held that no such consent was given. Therefore, the issues of "inherent jurisdiction" and "retained jurisdiction" are simply irrelevant.

### III.

### JURISDICTION OVER THE UNITED STATES

McClendon sued the United States as well as the Tribe. Although we have determined that there is no jurisdiction over the Tribe, we must decide whether this action can be maintained against the United States alone. We hold that it cannot. Because the Tribe is a party to the lease agreement sought to be enforced, it is an indispensable party under Fed.R.Civ.P. 19. *See Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325–26 (9th Cir.1975), *cert. denied*, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976); *see also Jicarilla Tribe*, 821 F.2d at 540. Any judgment in favor of McClendon will adversely affect the Tribe's interests, and because the relief sought by McClendon relates to the activities of the Tribe, any relief obtained in the Tribe's absence would be inadequate. McClendon's action must be dismissed in its entirety.

### IV.

### CONCLUSION

The initiation of the 1972 suit against the Clarks does not, in itself, constitute waiver of the Tribe's sovereign immunity against this action to enforce the terms of a lease, even though the lease was entered into as a result of an agreement to settle the earlier suit. The Tribe did not manifest unequivocal consent to suit in the settlement documents, the Clark lease, or the McClendon lease. Thus, McClendon's action against the Tribe is barred by sovereign immunity. The Tribe is an indispensable party under Rule 19, so the action cannot be maintained solely against the United States. The district court's judgment is

AFFIRMED.