284 F.3d 1154
 CITY OF SOUTH PASADENA; National Trust for Historic Preservation; Sierra Club; California Preservation Foundation; Los Angeles Conservancy; South Pasadena Preservation Foundation; South Pasadena Unified School District, Plaintiffs-Appellees,
v.
Norman Y. MINETA, Secretary of Transportation,* Defendant, and
Jeff Morales, Director, California Department of Transportation;** California Department of Transportation; California Transportation Commission, Defendants-Appellants.
 No. 99-56205.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 2001.
 Filed March 28, 2002.
 
 Glenn B. Mueller, Deputy Attorney General, California Transportation Commission, San Diego, CA, argued, defendants-appellants.
 Antonio Rossmann, Law Office of Antonio Rossmann, San Francisco, CA, argued, plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California, Dean D. Pregerson, District Judge, Presiding.
 Before KOZINSKI and THOMAS, Circuit Judges, and COLLINS, District Judge.***
 OPINION
 KOZINSKI, Circuit Judge:
 
 
 1
 We answer the question that must be on everyone's mind: Is the State of California barred from invoking its sovereign immunity in federal court because it waived this immunity through participation in a predecessor lawsuit?
 
 
 2
 * Interstate 710 has been kept about four miles away from completion by 29 years of federal litigation. This legal journey began in January 1973, when the City of South Pasadena[1] sought an injunction against construction of the freeway within its territory until California and the federal governments conducted certain environmental studies. With the district court's approval, the parties agreed to delay further construction until completion of the studies. Modified on several occasions, this stipulation remained in place for the next 25 years.
 
 
 3
 The studies were finally completed by April 1998 and the project thereafter received formal approval from both federal and California authorities. The city then sought leave to amend its complaint by adding new claims, which would raise procedural and substantive challenges to the studies. The city also wanted to delete five original plaintiffs and replace them with six new entities "whose claims ... arose subsequent to the filing of the original complaint."
 
 
 4
 The district court ruled that the final approval of the environmental report was "not a significant intervening event to justify the filing of a supplemental complaint 25 years after the original complaint." Order of Aug. 28, 1998, at 3. Rather, completion of the studies meant that the litigation had achieved its main goal, and that the state was no longer bound by the 1973 stipulation. The district court also pointed out that a supplemental pleading "cannot be used to introduce a `separate, distinct and new cause of action,'" id. at 4 (quoting Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997)), and that "[j]udicial efficiency cannot possibly be served by allowing new claims to be brought under entirely new legislation after 25 years," id. Nor, in the district court's view, would judicial efficiency be "served by adding six new plaintiffs after 25 years have passed" since the litigation began. Id. at 3. The court consequently denied the city's motion but pointed out that plaintiffs could proceed on the few remaining claims of their original complaint, as well as bring the new claims in a separate lawsuit.
 
 
 5
 The parties then stipulated to dismissal of the 1973 lawsuit. Two days later, the city commenced a new federal action, raising many of the claims in its attempted supplemental complaint. About three months later, the city amended the new complaint to import related state law claims from a separate action it had filed in state court; the state court action was stayed and is still pending.
 
 
 6
 The state promptly invoked sovereign immunity against litigating the state law claims in federal court. The district court rejected this defense, holding that the state had waived its Eleventh Amendment immunity in the course of the 1973 litigation. City of S. Pasadena v. Slater, 56 F.Supp.2d 1095, 1101 (C.D.Cal.1999). Concluding that the 1998 lawsuit was a continuation of the 1973 action, because both involved similar parties, facts and legal issues, the district court held that the waiver of immunity carried over to the current action. Id. The state brings this interlocutory appeal under the collateral order doctrine. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).
 
 II
 
 7
 The parties spill much ink arguing whether, under Hill v. Blind Industries and Services of Maryland, 179 F.3d 754 (1999), amended by 201 F.3d 1186 (9th Cir.2000), the state waived its Eleventh Amendment immunity in the 1973 action by raising it too late in the proceedings. Hill is inapposite. There, the state raised the sovereign immunity defense late, but it did raise it; we held that, in such circumstances, the state may or may not have waived the immunity, depending on a variety of factors. See Hill, 179 F.3d at 756-59. In our case, the state never invoked Eleventh Amendment immunity at all during the course of the 1973 action. It is elementary that any jurisdictional defect must be raised while the case is pending. In fact, most jurisdictional objections — such as defects in personal jurisdiction, venue or service of process—are waived unless asserted early in the litigation. See Fed.R.Civ.P. 12(h)(1); 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3522, at 73, 78 (2d ed.1984) (citations omitted). Even objections to subject-matter jurisdiction — which may be raised at any time, even on appeal — must be raised while the lawsuit is still pending; they may not be raised for the first time by way of collateral challenge in a subsequent action. A party that "had an opportunity to litigate the question of subject-matter jurisdiction" in the original proceeding "may not ... reopen that question in a collateral attack." Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (citing Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), and Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)). This rule applies in the Eleventh Amendment context. Gunter v. Atl. Coast Line R.R., 200 U.S. 273, 290, 26 S.Ct. 252, 50 L.Ed. 477 (1906) (having failed to invoke immunity during the litigation, a state may not do so after the lawsuit has ended, because any defenses it may have had, "whether brought to the attention of the court or waived, were foreclosed by the [judgment] decree") (citing United States v. Cal. & Or. Land Co., 192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476 (1904); Fayerweather v. Ritch, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904)).
 
 
 8
 By failing to invoke the immunity defense during the pendency of the 1973 action, the state waived it. See ITSI TV Prods., Inc. v. Agric. Ass'ns, 3 F.3d 1289, 1291 (9th Cir.1993) ("Eleventh Amendment immunity ... may be expressly waived, and may even be forfeited by the State's failure to assert it") (citations omitted).
 
 III
 
 9
 The state's earlier immunity waiver only helps plaintiffs if it carries over to the current lawsuit. The city, however, voluntarily dismissed the 1973 action pursuant to Fed.R.Civ.P. 41(a)(1)(ii). This was the city's first voluntary dismissal, and it was therefore without prejudice.[2] Such a dismissal "leaves the situation as if the action never had been filed." 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2367, at 321 (2d ed.1995); see also id. at 321 n. 8 (collecting cases). This means that "any future lawsuit based on the same claim [is] an entirely new lawsuit unrelated to the earlier (dismissed) action." Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir.1990), quoted in 9 Wright & Miller § 2367 at 321 n. 8.[3]
 
 
 10
 We have adhered slavishly to this interpretation of Rule 41(a). See, e.g., Commercial Space Mgmt. Co. v. Boeing Co., 193 F.3d 1074, 1078 (9th Cir.1999) ("it is beyond debate that [under] a dismissal under Rule 41(a)(1) ... the parties are left as though no action had been brought"); Wilson v. City of San Jose, 111 F.3d 688, 692 (9th Cir.1997) ("Such a dismissal leaves the parties as though no action had been brought.") (citation omitted); Concha v. London, 62 F.3d 1493, 1506-07 (9th Cir.1995) (same); Humphreys v. United States, 272 F.2d 411, 412 (9th Cir.1959) ("[A] suit dismissed without prejudice pursuant to Rule 41(a)(2) leaves the situation the same as if the suit had never been brought in the first place.") (citations and footnote omitted).[4]
 
 
 11
 The city argues that there is "[no] categorical rule that a waiver of sovereign immunity cannot carry over to a subsequent action." This is not surprising, because Fed.R.Civ.P. 41(a)(1) provides a categorical rule that is much broader — one that disallows the "carry-over" of any waivers from a voluntarily dismissed action to its reincarnation. South Pasadena does not explain why we should carve out an exception to this rule for waivers of sovereign immunity. If there were a special rule applicable to this situation, it would cut the other way: Because waivers of sovereign immunity are narrowly construed, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), we would be even less likely to conclude that the state's waiver survives the dismissal of the earlier case.
 
 
 12
 Because the state promptly raised the immunity defense against state law claims in the current litigation, and because these claims are undisputably of the type barred by the Eleventh Amendment, the district court erred in failing to dismiss them.
 
 
 13
 * * *
 
 
 14
 REVERSED and REMANDED for dismissal of all claims based on state law.
 
 
 
 Notes:
 
 
 *
 Norman Y. Mineta is substituted for his predecessor, Rodney F. Slater, as Secretary of Transportation. Fed. R.App. P. 43(c)(2)
 
 
 **
 Jeff Morales is substituted for his predecessor, Jose Medina, as Director of the California Department of Transportation. Fed. R.App. P. 43(c)(2)
 
 
 ***
 The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Joining the city as plaintiffs in the lawsuit were three environmental groups and three individuals
 
 
 [2]
 By contrast, if the party filing for voluntary dismissal has already once dismissed "an action based on or including the same claim," the second dismissal operates as an adjudication on the merits. Fed.R.Civ.P. 41(a)(1)
 
 
 [3]
 Rule 41(a)(1) has a few limited exceptions, notably allowing "consider[ation of] collateral issues," such as Rule 11 sanctions for conduct that took place before dismissal,Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), or, in some circuits, motions for attorney's fees and costs, see 9 Wright & Miller § 2367 at 82-83 (Supp.2001). None of these exceptions remotely resembles the drastic alteration of the Rule 41(a)(1) that the City of South Pasadena advocates. See p. 1158 infra.
 
 
 [4]
 AlthoughHumphreys discussed Rule 41(a)(2), which governs voluntary dismissal by order of the court, rather than Rule 41(a)(1), which permits such dismissal without the court's approval, the reasoning applies with equal force to both provisions. See Concha, 62 F.3d at 1506-07 ("a voluntary dismissal without prejudice under Rule 41(a)(1) has the same effect as a voluntary dismissal without prejudice under Rule 41(a)(2)") (citing 5 Moore's Federal Practice ¶ 41.02[5] & [6]) (1993)) (emphasis removed).