SHEPHERD, J.
The Miccosukee Tribe of Indians of Florida, a federally recognized Indian Tribe, petitions this Court for certiorari relief from an order denying the Tribe’s Motion for Protective Order and to Quash Subpoena for Deposition issued to Tribal Officer and General Counsel Bernardo Roman III, Esquire. We deny the petition.
The petition in this case emanates from a contentious series of post-judgment proceedings in execution on a $3,177 million dollar judgment rendered on August 5, 2009, against Miccosukee Tribe members, Tammy Gwen Billie and Jimmie Bert, arising out of a tragic automobile accident, which occurred on the Tamiami Trail in western Miami-Dade County ten years earlier. Gloria Liliana Bermudez died in the crash, and her husband, Carlos Bermu-dez, and their minor son, Matthew Bermu-dez, were injured. There have been no fewer than twenty post-judgment motions for sanctions since the judgment was ren *233 dered, including criminal contempt, slung by the parties’ counsel against each other under the guise of the parties themselves. The plaintiffs have yet to realize any recovery on the judgment. The Tribal defendants assert penury.
The slice of this unseemly clash which appears before us arises from a sua sponte order by the trial court to Lewis Tein, PL, most prominently Michael Tein, to justify a statement he made to the trial court under oath on August 30, 2011, that the Miccosukee Tribe did not pay for the firm’s services in the defense of the tribe members in the wrongful death case.[1] This order, in turn, was animated by an earlier order entered by the trial judge, awarding $3500 in attorney fees against Lewis Tein, PL, pursuant to section 57.105(2) of the Florida Statutes (2011), for discovery abuse and delay for first objecting to a post-judgment execution discovery request and, after the objections were overruled, responding that there were no such documents. See First Healthcare Corp. v. Hamilton, 740 So.2d 1189, 1193 n. 2 (Fla. 4th DCA 1999), disapproved of on other grounds by Fla. Convalescent Ctrs. v. Somberg, 840 So.2d 998 (Fla.2003) (finding such conduct to constitute discovery abuse and improper delaying tactics) (citing Greenleaf v. Amerada Hess Corp., 626 So.2d 263, 264 n. 1 (Fla. 4th DCA 1993)). The court in the earlier order expressly stated the amount of the sanction would have been “significantly different” — the plaintiffs claimed they incurred $150,000 in unnecessary attorney fees and costs litigating the subject matter of the request for production over a two-year span — if “Mr. Lewis and/or Mr. Tein [were] in fact representing the Miccosukee Tribe in attempting to avoid paying this judgment,” and the Tribe “was paying for [the] representation” of the defendants.
A few days after the trial court sanction order was entered against Lewis Tein, PL, Miccosukee officer and Tribal counsel, Bernardo Roman III, for reasons mystifying to us — plaintiffs’ counsel made clear in these post-judgment proceedings he is pursuing theories he believes would make the Tribe liable to satisfy the judgment as well — supplied plaintiffs’ counsel with copies of checks drawn on the Miccosukee Tribe General Account payable to Lewis Tein, PL, in the amount of $3,111,567.63, for the defense of Tammy Gwen Billie and Jimmie Bert in the Bermudez wrongful death and personal injury litigation, from May 2005 through April 2010. At oral argument on this petition, Mr. Roman represented that the Miccosukee Tribe had duly authorized him, as their counsel, to deliver the checks to plaintiffs’ counsel and that indeed, the Tribe itself paid Lewis Tein, PL’s, fees and costs for the defense *234 of Tammy Gwen Billie and Jimmie Bert. In sharp contrast to Mr. Roman’s representations, Lewis Tein, PL, has placed in the record the affidavits of Interim Micco-sukee Tribe Chairman (1989-2009), Billy Cypress, and former Miccosukee Tribe Accounting Supervisor/Finance Officer (1990-2009), Julio Martinez, averring that Tammy Billie and Jimmie Bert, together with his wife, Louise Bert, “were solely responsible for Lewis Tein’s legal fees,” and “[i]n all cases, those payments were either (a) charged against their distributions on a current basis, or (b) loans from the Tribe to them against future distributions.”
Thankfully, it is not our job to decide the truth of the statements made, or determine whether Mr. Tein committed perjury, or Mr. Lewis or Lewis Tein, PL, are guilty of related misdeeds. It is our task to determine only whether the trial court departed from the essential requirements of law by denying Mr. Roman’s Motion for Protective Order and to Quash [His] Subpoena for Deposition. This is a case in which the facts easily drive the conclusion that there is no departure.
 It is true, as Bernardo Roman III, argues on his own behalf, the Tribe has sovereign immunity from suit, and this extends to protect the Tribe from complying with subpoenas. See United States v. James, 980 F.2d 1314, 1319 (9th Cir.1992). However, Tribal members in their individual capacity have no sovereign immunity. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). At such a deposition, the witness can refuse to answer questions, for example, about Tribal practices and policies and, if these were the only plausible reasons for taking the deposition, a court might deny a motion to compel attendance of a witness altogether. Knox v. U.S. Dep’t of the Interior, No. 4:09-CV-162-BLW, 2012 WL 465585, at *1 (D.Idaho Feb. 13, 2012). In this case, however, Mr. Roman offers no plausible argument that the inquiry desired to be made of him— solely whether Lewis Tein, PL’s, legal bills were paid by the Tribe or the individual defendants — is in any way related to Tribe practices and policies, and thus sufficient to raise the specter of immunity.[2]
Mr. Roman seeks to render Knox inapplicable to our case on the ground that in Knox, the Shoshone Bannock Tribe asked and were granted the right to file an amicus brief accompanied by declarations of three of their tribal members, triggering the order authorizing a deposition limited to the topics covered in the declarations, whereas the activity of the Tribe in this case was extra record activity. We are not persuaded by the distinction. Mr. Roman has made plain that his duly authorized act of providing the checks to plaintiffs’ counsel was intended to influence ongoing litigation in our state courts. With the Tribe’s blessing, he has elected to insert himself into the post-judgment discovery contretemps between the parties and their counsel. An election to participate in litigation is not a one-way street. Mr. Roman cannot seek to participate in or influence litigation in another sovereign entity, the State of Florida, then retreat into his own sovereign when it suits him.
Similarly, neither Cypress v. Tamiami Partners, Ltd., 662 So.2d 1292 (Fla. 3d DCA 1995), nor Miccosukee Tribe of Indians v. Napoleoni, 890 So.2d 1152 (Fla. *235 1st DCA 2004), offer any succor to Mr. Roman in this case. Although we quashed the depositions of two Miccosukee Tribe officials in Cypress, the opinion does not explain the factual basis for our decision. Cypress, 662 So.2d at 1292. As we have demonstrated, the application of Tribal sovereignty is a fact-specific inquiry. Napoleoni, on the other hand, is factually distinguishable from the ease before us. In Napoleoni, Claudia Napoleoni was injured at the Miccosukee Resort and Gaming Convention Center, which was wholly owned by the Tribe. Napoleoni, 890 So.2d at 1158. The Tribe passed a resolution a few years before Ms. Napoleoni injured herself, establishing its own workers’ compensation benefit system and explicitly rejecting the State of Florida workers’ compensation laws. Id. Despite this resolution, Ms. Napoleoni filed a workers’ compensation claim for benefits with the Florida Division of Administrative Hearings. Id. The Tribe filed a petition for certiorari, seeking review of a non-final discovery order requiring a tribal official to appear for deposition, and a writ of prohibition barring any further proceedings before the Division of Administrative Hearings. Id. Ms. Napoleoni countered that the Tribe had waived tribal immunity pursuant to section 440.04 of the Florida Statutes by purchasing a workers’ compensation insurance policy in 1974. The First District Court of Appeal granted both writs. The Court stated:
[T]he Tribe and its agents are immune from suit in federal or state court without (1) a clear, explicit, and unmistakable waiver of tribal sovereign immunity, or (2) a congressional abrogation of that immunity.
Even assuming the Tribe did purchase a workers’ compensation policy in 1974, claimant’s assertion that the purchase of such a policy is an explicit waiver of tribal immunity is without merit. The Tribe explicitly rejected waiver of this immunity by its 1998 resolution establishing its own tribal workers’ benefits system. Therefore, the [Division of Administrative Hearings] had no jurisdiction.
Id. at 1153-54 (emphasis added) (citations omitted). In Napoleoni, the waiver was not “clear, explicit and unmistakable.” In contrast, there can be no mistake about what occurred in our case. Mr. Roman, in an act approved by the Tribe, admittedly, has purposefully sought to participate in or influence a state court proceeding. We can conceive of no motive for the Tribe or Mr. Roman to have done so. The only plausible legal conclusion that can be drawn from the actions of Mr. Roman and the Tribe in this case is the one made by the trial court — the Tribe’s and Mr. Roman’s conduct constituted a clear, explicit, and unmistakable waiver of the Tribe’s claim to sovereign immunity.
For these reasons, we deny the petition for writ of certiorari.

. The allegedly offending statement made by Mr. Tein is as follows:
Our client is not the Miccosukee Tribe. The Miccosukee Tribe is not a party in this case.
The affidavit that Mr. Rodriguez gave you is absolutely true. They have been responsible for — the Defendants have been responsible for our fees and they ... at that time they had been paying our fees.
By January [2011] they had run up ... a receivable. They hadn’t paid since, my recollection is, August of 2010. And we haven't been paid anything since August of 2010.
Lewis Tein, PL, contends the trial judge harbored a misunderstanding of the statement made by Mr. Tein at the hearing. The trial court since has indicated, upon review of the portion of the transcript containing the statement, that it "thought there was more than there was.” At the same time, the trial court also reminded counsel of his statement made at the conclusion of the August 30, 2011, hearing in the presence of Mr. Lewis and Mr. Tein that "[t]hey [Lewis and Tein] stated they weren’t paid by the Miccosukee Indians,” a statement which, if not true, was not corrected by either Mr. Lewis or Mr. Tein at the time.

. Two arguments were made — first, the checks were provided because Lewis Tein, PL, was committing a fraud on the court by asserting it was not paid by the Tribe, and, second, for "the protection of the individual tribal members involved in the case.” Upon examination at oral argument, Mr. Roman conceded neither of these reasons "afford any value or gain for the Tribe.”