# Third District Court of Appeal

## State of Florida

Opinion filed August 9, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2826
Lower Tribunal No. 16-21856
_____

## Miccosukee Tribe of Indians of Florida,
Appellant,

vs.

## Lewis Tein, P.L., et al.,
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Saunooke Law Firm, P.A., and Robert O. Saunooke (Miramar); Alston & Bird LLP, George B. Abney, Daniel F. Diffley, and Michael J. Barry (Atlanta, Georgia), for appellant.

Colson Hicks Eidson, P.A., Curtis B. Miner, Roberto Martinez, and Stephanie Casey, for appellees.

Rice Pugatch Robinson Storfer & Cohen PLLC, and Craig A. Pugatch, for United South and Eastern Tribes, Inc., as amicus curiae.

Before ROTHENBERG, C.J., and SCALES and LUCK, JJ.

LUCK, J.

"There are reasons to doubt the wisdom of perpetuating the doctrine" of tribal immunity. <u>Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.</u>, 523 U.S. 751, 758 (1998). It "can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims." <u>Id.</u> No one knows this more than Guy Lewis and Michael Tein. The Miccosukee Tribe of Indians of Florida, according to Lewis and Tein's complaint, spent five years filing false lawsuits, suborning perjury, and obstructing justice, in an effort to damage the attorneys' finances, reputations, and law firm. Whatever its wisdom, tribal immunity endures, and Indian tribes are not subject to the civil jurisdiction of our courts absent a clear, explicit, and unmistakable waiver of tribal sovereign immunity or a congressional abrogation of that immunity. Because neither exception to tribal immunity has been established in this case, we reverse the trial court's denial of the Miccosukee Tribe's motion to dismiss.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

<u>The Bermudez Wrongful Death Case</u>. In 2000, the Bermudez family filed a wrongful death action against Tammy Billie and Jimmie Bert, two members of the Miccosukee Tribe, based on their involvement in a 1998 car accident in which Gloria Bermudez was killed and her husband and son were injured. The Tribe was not a party to the action. In 2005, Lewis and Tein were hired to take over Billie

2

and Bert's defense in the wrongful death action.[1] Damages were awarded in 2009 in the amount of $3.177 million to the Bermudez family. Following entry of the 2009 civil judgment, the Bermudez family began collections proceedings against Tammy Billie and Jimmy Bert; the family also sought to enforce the judgment against the Tribe itself, even though the Tribe was not a party to the suit.

In September 2011, Bernardo Roman, the Tribe's new attorney, provided the Bermudez family attorney with copies of sixty-one checks and check stubs from the Tribe's general account, payable to Lewis and Tein in the amount of $3,111,567. By doing so, the Tribe falsely represented to the trial court that the Tribe paid for the defense of Tammie Billie and Jimmie Bert in the wrongful death action. (In fact, the Tribe loaned the money to Billie and Bert to pay for their attorney's fees out of their quarterly dividends that all Tribe members receive.) Based on Roman's actions, the Bermudez attorney launched, what turned out to be, a false claim of perjury and fraud on the court against Lewis and Tein. During these proceedings, Roman filed a motion for protective order and to quash a subpoena for deposition.

In <u>Miccosukee Tribe of Indians of Florida v. Bermudez</u>, 92 So. 3d 232 (Fla. 3d DCA 2012), this court held that the Tribe and Roman's conduct in providing

---

[1] From 2005 to 2010, Lewis and Tein represented the Tribe and individual Tribe members in various legal proceedings.

3

the Bermudez attorney with the checks constituted a waiver of the Tribe's sovereign immunity. This Court explained that:

> [T]here can be no mistake about what occurred in our case. Mr. Roman, in an act approved by the Tribe, admittedly, has purposefully sought to participate in or influence a state court proceeding. We can conceive of no motive for the Tribe or Mr. Roman to have done so. The only plausible legal conclusion that can be drawn from the actions of Mr. Roman and the Tribe in this case is the one made by the trial court – the Tribe's and Mr. Roman's conduct constituted a clear, explicit, and unmistakable waiver of the Tribe's claim to sovereign immunity.

Id. at 235. This Court further expressed bewilderment as to the purpose of the Tribe's actions. Id. at 233 ("[F]or reasons mystifying to us . . . [the Tribe] supplied plaintiff's counsel with copies of checks drawn on the Miccosukee Tribe General Account payable to Lewis Tein."). After numerous hearings and discovery in the Bermudez proceedings, the trial court found that Lewis and Tein did not commit perjury and did not engage in fraud on the court or misconduct.

State Court Action. On April 2, 2012, the Tribe filed an action against Lewis and Tein in Miami-Dade circuit court, alleging malpractice, breach of fiduciary duty, fraud, fraud in the concealment, conspiracy to defraud, civil RICO conspiracy, civil racketeering, theft, and conversion. The trial court granted Lewis and Tein's motion for summary judgment and, alternatively, dismissed the case for lack of subject matter jurisdiction because the complaint was predicated on an intra-tribal dispute. In Miccosukee Tribe of Indians of Florida v. Lewis, 165 So. 3d

4

9 (Fla. 3d DCA 2015), this court affirmed the summary judgment because "the Tribe's expert was unable to identify a single invoice by the Lawyers that he believed was fraudulent, illegal, or excessive." Id. at 12. Subsequently, the trial court awarded Lewis and Tein reasonable attorney's fees as a sanction against the Tribe. In its order the trial court expressly found that the Tribe knew the claims were unfounded and frivolous and that "[t]he Tribe and Roman filed this lawsuit in bad faith."

Federal Court Action. On July 1, 2012, the Tribe filed an action against Lewis and Tein and other parties in federal court, alleging, in part, federal racketeering, conspiracy to engage in racketeering, fraud, aiding and abetting fraud, state racketeering, and breach of fiduciary duty. See Miccosukee Tribe of Indians of Fla. v. Cypress, 975 F. Supp. 2d 1298, 1301-02 (S.D. Fla. 2013). The federal court dismissed the lawsuit for lack of subject matter jurisdiction, id. at 1308, and the Eleventh Circuit Court of Appeals affirmed. See Miccosukee Tribe of Indians of Fla. v. Cypress, 814 F. 3d 1202 (11th Cir. 2015). After a hearing on sanctions, the federal district court issued a written order sanctioning the Tribe and Roman in the amount of $975,750, and remarked that Roman's "behavior [was] egregious and abhorrent." See Miccosukee Tribe of Indians of Florida v. Cypress, No. 12-22439-CIV, 2015 WL 235433, at *19 (S.D. Fla. Jan. 16, 2015) ("Here, the

wrongful conduct is the filing of the complaints with no reasonable factual basis to support their allegations").

Second State Court Action. On November 16, 2013, the Tribe filed a second state court action, asserting essentially the same claims that were dismissed in federal court. On July 30, 2015, the trial court dismissed the second state court action based on res judicata grounds, stating that, "[a]t bottom, this case is simply another attempt to make the same claims that two prior judges have determined are factually baseless, or are outside the Court's jurisdiction as tribal governance." See Miccosukee Tribe of Indians of Fla. v. Cypress, No. 2013CA35936, 2015 WL 9438244, at *3 (Fla. 11th Cir. Ct. Jul. 30, 2015).

This Case. On August 22, 2016, Lewis and Tein filed a complaint against the Tribe, alleging one count of civil remedies for criminal practices pursuant to section 772.103(3), Florida Statutes, and four counts of malicious prosecution premised on the Bermudez wrongful death action (count two),[2] the 2012 state court action (count three), the federal court action (count four), and the second state court action (count five). The complaint sought both economic and non-economic damages.

---

[2] Following the appeal in this case, the trial court granted a motion to dismiss for failure to state a cause of action as to the malicious prosecution claim pertaining to the Bermudez wrongful death action (Count II).

6

The Tribe filed a motion to dismiss for lack of subject matter jurisdiction based on tribal sovereign immunity. Lewis and Tein responded that the Tribe's sovereign immunity waiver in the Bermudez case applied broadly to this case, too, and that, alternatively, the Tribe's litigation conduct in knowingly filing frivolous lawsuits against Lewis and Tein waived the Tribe's immunity.

The trial court denied the motion because, it concluded, the Bermudez decision found an explicit waiver of immunity, and the Tribe's litigation conduct in the four prior cases "demonstrated a clear, explicit and unmistakable waiver of sovereign immunity with regard to this matter." This appeal followed.

**STANDARD OF REVIEW**

We have jurisdiction to review appeals of non-final orders that determine, as a matter of law, a party is not entitled to sovereign immunity. Fla. R. App. P. 9.130(a)(3)(C)(xi) ("Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to qualified immunity.").[3] "The issue of sovereign immunity . . . is a legal

---

[3] Traditionally, the Florida courts had reviewed a trial court's denial of a tribe's motion to dismiss based on sovereign immunity under its certiorari jurisdiction. See Seminole Tribe of Fla. v. McCor, 903 So. 2d 353, 357 (Fla. 2d DCA 2005) (Canady, J.) ("We have previously exercised our common law certiorari jurisdiction to review a trial court order denying a motion to dismiss where the motion was based on the assertion that the trial court lacked subject matter jurisdiction because the suit was barred by tribal sovereign immunity. Certiorari jurisdiction exists in this context because the inappropriate exercise of jurisdiction by a trial court over a sovereignly-immune tribe is an injury for which there is no adequate remedy on appeal." (citations omitted)). In 2014, however, the Florida

7

issue subject to a de novo standard of review." Plancher v. UCF Athletics Ass'n, Inc., 175 So. 3d 724, 725 n.3 (Fla. 2015); see also Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1285 (11th Cir. 2001) ("We review de novo the district court's dismissal of a complaint for sovereign immunity.").[4]

## DISCUSSION

The Tribe contends the trial court erred in concluding that it waived its immunity. First, the Tribe claims, its immunity waiver in Bermudez was limited to the issue in that case – the disclosure of the sixty-one checks and check stubs by the Tribe's attorney – and did not extend beyond that to a separate lawsuit involving conduct over a five year period. Second, the Tribe argues, its litigation conduct in the first and second state court actions and the federal court action was not an express waiver of its tribal immunity.

> "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Congressional waiver or abrogation of tribal sovereign immunity must be unequivocal and does not arise by implication. Likewise, a waiver of tribal immunity by a tribe must be clear.

---

Supreme Court added determinations by the trial court that a party is not entitled to sovereign immunity as one of the few non-final orders that are appealable. In re Amends. to Fla. R. App. P. 9.130, 151 So. 3d 1217, 1217-18 (Fla. 2014) ("[W]e modify the Committee's proposal to authorize appeals from nonfinal orders which determine, as a matter of law, that a party is not entitled to sovereign immunity."). Because of this amendment, we review this case as an appeal of a non-final order rather than a petition for writ of certiorari.

[4] Because "[t]ribal immunity is a matter of federal law," Kiowa Tribe, 523 U.S. at 756, we rely on a number of federal court decisions throughout this opinion.

8

"Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe."

Seminole Tribe of Fla. v. McCor, 903 So. 2d 353, 358 (Fla. 2d DCA 2005) (Canady, J.) (citations omitted). This is a waiver case (there is no allegation that Congress abrogated the Tribe's sovereign immunity), and for us to find the Tribe waived its immunity, the party claiming the waiver must "show a clear, express and unmistakable waiver of sovereign immunity by the Tribe." Cupo v. Seminole Tribe of Fla., 860 So. 2d 1078, 1079 (Fla. 1st DCA 2003).

### 1. The Limited Waiver in Bermudez

One of the basic principles of appellate law is that the holding of a decision cannot extend beyond the facts of the case. See Adams v. Aetna Cas. & Sur. Co., 574 So. 2d 1142, 1153 (Fla. 1st DCA 1991) ("It is elementary that the holding in an appellate decision is limited to the actual facts recited in the opinion, so the supreme court's statements hypothesizing about the absence of a written rejection, being contrary to the actual facts in this case, are pure dictum."); see also UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1293 (11th Cir. 2014) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." (quotation omitted)); Twyman v. Roell, 166 So. 215, 217 (Fla. 1936) ("To be of value as a precedent, the questions raised by the pleadings and adjudicated in the case cited as a precedent must be in point with those presented in the case at bar.");

9

Rey v. Philip Morris, Inc., 75 So. 3d 378, 381 (Fla. 3d DCA 2011) ("No Florida appellate decision is authority on any question not raised and considered, although it may be involved in the facts of the case." (quotation omitted)). Our conclusion in Bermudez – that "the Tribe's and Mr. Roman's conduct constituted a clear, explicit, and unmistakable waiver of the Tribe's claim to sovereign immunity," Bermudez, 92 So. 3d at 235 – is, likewise, limited to the facts of that case.

These are the facts of the Bermudez case. The Bermudezes sought to have the trial court reconsider its sanctions order based on new information they received showing that the Tribe had paid Lewis and Tein's attorney's fees. To their motion, the Bermudezes attached copies of sixty-one checks and check stubs showing payments from the Tribe to Lewis and Tein that the Bermudezes claimed they received from Roman, the Tribe's attorney. In response, Lewis and Tein subpoenaed Roman for a deposition. Roman filed an emergency motion for protective order and to quash the subpoena based on tribal immunity.

*a. Response to Emergency Motions for Protective Order and to Quash Subpoenas.* Lewis and Tein responded to Roman's motion. In their response, Lewis and Tein said that if the Tribe authorized Roman to disclose the checks to the Bermudezes, then it "waived its sovereign immunity as to the subject matter of the act." Roman's "act" of giving the checks "waived sovereign immunity as to the subject matter of his action." Lewis and Tein described the nature and

10

limitation of the sovereign immunity waiver. "If [] Roman was actually working in his tribal capacity," they wrote, "then he waived sovereign immunity <u>as to the subject matter of his disclosure</u> by injecting himself and the Tribe into this case." Lewis and Tein, then, defined "the subject matter of the disclosure – the checks and the check stubs, as well as the underlying documents pertaining to them."

Lewis and Tein relied, primarily, on a federal district court decision out of Idaho, <u>Knox v. United States Department of the Interior</u>, No. 4:09-CV-162-BLW, 2012 WL 465585, at *1 (D. Idaho Feb. 13, 2012). Lewis and Tein, describing <u>Knox</u>, wrote that the tribal members in that case "had injected themselves into the litigation by seeking to file an amicus brief and declaration of the tribal officers concerning the Tribes' gaming operation." Lewis and Tein acknowledged that "the filing of these documents did not waive the Tribes' sovereign immunity generally." However, quoting from the <u>Knox</u> case, Lewis and Tein wrote that by inserting itself in the litigation, the Idaho tribe gave a limited waiver of its immunity "to resist a deposition limited to the topics covered in their Declarations." (This last part was bolded.) The Idaho federal court, the pair explained, "granted the plaintiffs the right to take deposition of the tribal members limited to the matters contained in the tribal official's declarations." In the response's conclusion section, Lewis and Tein sought the same limited relief as in

11

Knox: to take the deposition of Roman in connection with the disclosure of the sixty-one checks and check stubs.

b. *Hearing on Emergency Motions for Protective Order and to Quash Subpoenas.* At the hearing on Roman's motion to quash, Lewis and Tein made the same points. Citing again to the Knox case, they told the trial court:

> The [Knox] Court granted the motion to compel attendance of these [tribal] lawyers at the depositions to quote, "Answer questions <u>limited to the matters relevant to the contents of the declarations they filed in this case</u>," unquote.
> That is all we are seeking.

Lewis and Tein defined the scope of the inquiry to "questions about when [Roman] gave those records, what [he] said to the person [he] gave the records to, how [he] got the records, where [he] gave it to [the Bermudezes], [and his] communications with the [Bermudezes' attorney]."

At the end of the hearing, the trial court explained that it was "inclined to say that there is a waiver by the production of those documents." However, the trial court continued, "I think <u>there is a limited issue here</u> and <u>I am limiting the scope of the discovery</u> to those questions that [Lewis and Tein] just proffer[ed] that he wanted to ask." "I'm going to find that there is sovereign immunity," the trial court ruled, but "I believe the actions of turning those checks over have at least <u>resulted in a limited waiver of that immunity</u>. So <u>to that extent</u>, I'm going to overrule [Roman's] immunity objection." After the trial court gave its oral ruling,

12

Lewis and Tein clarified the scope of any appeal, "So the only thing that Your Honor is ruling on today . . . is so it's <u>a narrow issue</u> for the – the <u>narrow issue for the Third DCA is [] Roman's emergency motion</u>." The trial court's written order denied Roman's emergency motion to quash the subpoena, and confirmed its "find[ing] that Mr. Roman gave <u>a limited waiver of sovereign immunity</u> by disclosing checks and check stubs to plaintiffs' counsel."

c. *Response to Miccosukee Tribe of Indians of Florida's Petition for Writ of Certiorari.* As promised, the Tribe filed a petition for writ of certiorari with our court to quash the trial court's order. In their response to the petition, Lewis and Tein summarized their position that "[e]ven if sovereign immunity applies, Mr. Roman <u>gave a limited waiver</u>, as the trial court found here, by voluntarily disclosing the checks and check stubs to [the Bermudezes]." Lewis and Tein described the trial court's order under review as finding "<u>a limited waiver</u>, thus permitting [Roman's] deposition." Lewis and Tein argued the trial court's "decision to allow the deposition should be affirmed because . . . Mr. Roman's actions <u>constituted a limited waiver of sovereign immunity</u>." Relying again on the <u>Knox</u> case, Lewis and Tein wrote that Roman "waived sovereign immunity as to the subject matter of his disclosure" and they "are permitted to take discovery from [] Roman regarding the subject matter of the disclosure – the checks and check stubs, as well as the underlying documentation pertaining to them." Lewis and

13

Tein concluded that the trial court was correct in "finding that [] Roman gave a limited waiver of sovereign immunity by injecting himself into the trial court litigation."

*d. The Bermudez Decision.* In Bermudez, we described the Tribe's petition as seeking "certiorari relief from an order denying the Tribe's Motion for Protective Order and to Quash Subpoena for Deposition issued to" Roman, the Tribe's attorney. Bermudez, 92 So. 3d at 232. We, likewise, explained that "the inquiry desired to be made of [Roman] [was] solely whether Lewis Tein, PL's legal bills were made by the Tribe or the individual defendants." Id. at 234. It was in this context that we found "the Tribe's and Mr. Roman's conduct constituted a clear, explicit, and unmistakable waiver of the Tribe's claim to sovereign immunity," id. at 235, and denied the petition for writ of certiorari.

\* \* \*

From this record, the extent of the Tribe's immunity waiver in the Bermudez case is clear. The Tribe was immune from the Bermudez lawsuit but waived its immunity to a limited extent to allow Roman's deposition about the disclosure of the sixty-one checks and check stubs. Lewis and Tein asked for a limited waiver, and described the waiver as allowing them to depose the Tribe's attorney about the disclosure. The trial court granted a limited waiver on those terms. Lewis and

14

Tein, in the <u>Bermudez</u> appeal, described the trial court's order as a limited waiver in arguing to deny the Tribe's certiorari petition.

We rely on the same <u>Knox</u> case that Lewis and Tein relied on, and that we cited in <u>Bermudez</u>. In <u>Knox</u>, "the Tribes asked, and were granted, the right to file an amicus brief accompanied by Declarations [of three tribe members] that discussed the Tribes' gaming operations." <u>Knox</u>, 2012 WL 465585, at *1. The federal district court concluded that although the filing of these declarations "did not waive the Tribes' sovereign immunity generally, it did waive the right" of the three tribal executives "to resist a deposition limited to topics covered in their Declarations." <u>Id.</u> If the Tribe dips its toe in the litigation waters, the reasoning goes, it can be asked about its toe but not the whole body.

Here, too, Roman, on the Tribe's behalf, dipped his toe in the ongoing <u>Bermudez</u> litigation by giving to the Bermudezes the checks and check stubs. As in <u>Knox</u>, the Tribe maintained its immunity generally, but waived it to the limited extent that its tribal attorney was subject to a deposition about the checks. That was the limited waiver advocated by Lewis and Tein, adopted by the trial court, and the subject of the petition for writ of certiorari that was before the court in <u>Bermudez</u>.

Importantly, filing the declarations in <u>Knox</u>, while a limited immunity waiver, did not open up the Idaho tribes to being hauled into court as defendants in

15

that case. The federal district court had "already denied plaintiffs' attempt to add the Tribes as defendants, holding that the Tribes were protected by sovereign immunity." Id. The amicus brief and attached declarations didn't open the sovereign immunity door any more than allowing the deposition of the tribal executives on the subject of the declarations.

Likewise in this case, the Bermudez limited immunity waiver did not open the door to the Miccosukee Tribe being hauled into court in the underlying Bermudez case, or any subsequent cases. The limited waiver in Bermudez opened the door a crack for the Roman deposition about the checks, but it didn't bust the door open to allow in everything that happened after the deposition, including the allegations of the Tribe's perjury, obstruction of justice, and vexatious litigation in the five years that followed.

While participating in litigation is not a one-way street, as we explained in Bermudez, the length of the street extends only so far as the Tribe's participation. In Knox, the Idaho tribes participated in the litigation to the extent they filed the amicus brief and attached the declarations of the three tribal executives. Tribal immunity was waived only to allow the plaintiffs in that case to depose the tribal executives about the substance of the declarations. In Bermudez, the Tribe participated by authorizing Roman to give the checks to the plaintiffs. Lewis and Tein argued for a limited immunity waiver to depose Roman about the checks and

16

check stubs; the trial court granted the "limited waiver"; and we refused to quash the limited waiver by denying the petition for writ of certiorari.

Our holding in Bermudez could not have found a waiver of sovereign immunity beyond what the facts dictated, what Lewis and Tein requested, and what the trial court ordered. We did no more than deny the petition to review the trial court's order allowing the Tribe's attorney to be deposed about the checks and check stubs, and confirm the limited waiver of immunity. Reading Bermudez for a broader waiver of the Tribe's immunity, as the trial court did here, is not supported by the facts of the Bermudez case, Lewis and Tein's opposition to the motion to quash, the trial court's order, and the parties' arguments before this court.

### 2. The Tribe's Litigation Conduct

In addition to the Bermudez limited waiver, the trial court found a clear, explicit, and unmistakable waiver of the Tribe's sovereign immunity based on the Tribe's litigation conduct during the five years after Bermudez – frivolous lawsuits, false statements, and obstruction of justice. The Tribe contends that bad litigation conduct in one case does not constitute an immunity waiver in a subsequent, related case.

We begin by noting that nothing in this opinion precludes a trial court from sanctioning a tribe for bad faith conduct or vexatious litigation in the case where the conduct occurred. Where the tribe chooses to litigate in our courts, it must

17

follow the same rules that apply to all litigants:  no lying; no destroying evidence; no filing claims without a basis in law or fact.  Here, for example, the trial court sanctioned the Miccosukee Tribe in the first and second state court actions for claims that were "baseless" and brought in "bad faith."  Assuming the allegations in the complaint are true, the sanctions were entirely proper in the case where the Tribe was actively litigating.

This case presents a much narrower issue:  Was the Miccosukee Tribe's litigation in <u>Bermudez</u>, the first and second state court actions, and the federal court action a clear, explicit, and unmistakable waiver of its sovereign immunity, opening the door to the Tribe being sued by Lewis and Tein in a subsequent, related case for malicious prosecution and civil liability under section 772.103(3)? The general rule is that a tribe's immunity waiver in litigating one case does not waive immunity in subsequent cases.  Two decisions of the federal appellate courts explain the point well.

In <u>McClendon v. United States</u>, 885 F.2d 627 (9th Cir. 1989), two couples sued the Colorado River Tribe for breach of a lease agreement.  <u>Id.</u> at 628.  The federal trial court dismissed the case for lack of subject matter jurisdiction based on tribal sovereign immunity.  <u>Id.</u> at 629.  On appeal, the couples argued that the Tribe waived its immunity regarding its rights to the leased property because it had initiated and litigated an earlier case over the same property in 1972.  <u>Id.</u> at 629-30.

The Ninth Circuit affirmed, explaining that while "[i]nitiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy," the "tribe's waiver of sovereign immunity may be limited to the issues necessary to decide the action brought by the tribe; the waiver is not necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts." Id. at 630. "The initiation of the suit, in itself," the court continued, "does not manifest broad consent to suit over collateral issues." Id. at 631. In response to the argument "that allowing the Tribe to sue without exposing itself to suit for subsequent related matters is unfair," the Ninth Circuit, quoting from the United States Supreme Court, explained: "[t]he perceived inequities of permitting the Tribe to recover from a non-Indian for civil wrong in instances where a non-Indian allegedly may not recover against the Tribe simply must be accepted in view of the overriding federal and tribal interests in these circumstances." Id. (quoting Three Affiliated Tribes v. Wold Eng'g, 476 U.S. 877, 893 (1986)).

Likewise, in Jicarilla Apache Tribe v. Hodel, 821 F.2d 537 (10th Cir. 1987), an oil company sued the tribe "seeking to pay adjusted bonuses to preserve its interests in certain oil and gas leases." Id. at 538. The federal trial court dismissed the lawsuit "for lack of jurisdiction over the Tribe." Id. The tribe's earlier litigation over the same oil and gas leases, the court explained, was not "a

19

sufficiently unequivocal expression of waiver in subsequent actions related to the same leases." Id. at 539.

The United States Supreme Court has extended the general rule – that the tribe's immunity waiver in one lawsuit does not open the door to waiver in a related suit – to compulsory counterclaims.[5] That is, even if the tribe waives its immunity by suing a non-tribe party, the immunity waiver does not extend to the non-tribe's compulsory counterclaims in the same litigation.

In Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505 (1991), the tribe sued the state for injunctive relief prohibiting the state from collecting state cigarette taxes on tribe property. Id. at 507. The state counterclaimed for a declaratory judgment that its tax lien was enforceable and an injunction for the tribe to stop selling cigarettes without collecting state taxes. Id. at 507-08. The tribe moved to dismiss the counterclaims because it had not waived its sovereign immunity and could not be sued by the state. Id. at 508. The state responded that its counterclaims were "compulsory" under Federal Rule of Civil Procedure 13(a), which requires a party to bring a counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Id. at 509; Fed. R. Civ. P. 13(a). Even where the tribe is affirmatively

---

[5] There is an exception for recoupment counterclaims arising out of the same facts as the underlying lawsuit, but the exception does not apply to Lewis and Tein's claims (and they do not contend that it does).

20

litigating based on the same facts as the opposing party's claim, the Court held, "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." Citizen Band, 498 U.S. at 509.

The general rule still holds even if the tribe's sovereign immunity is deeply troubling to the courts, and results in unfairness and inequity to the non-tribe party. See Lewis v. Norton, 424 F.3d 959, 963 (9th Cir. 2005) ("We agree with the district court's conclusion that this case is deeply troubling on the level of fundamental substantive justice. Nevertheless, we are not in a position to modify well-settled doctrines of tribal sovereign immunity. This is a matter in the hands of a higher authority than our court."); Wichita & Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765, 781 (D.C. Cir. 1986) ("Immunity doctrines inevitably carry within them the seeds of occasional inequities; in this case the Wichitas have used the courts as both a sword and shield. Nonetheless, the doctrine of tribal immunity reflects a societal decision that tribal autonomy predominates over other interests."). For example, even where a tribe engages in vexatious and bad faith litigation in a prior lawsuit, the unfairness and inequity to the non-tribe party still does not waive the tribe's immunity in a subsequent case arising out of the same facts.

In Beecher v. Mohegan Tribe of Connecticut, 918 A.2d 880 (Conn. 2007), the tribe sued one of its former employees to enjoin him "from communicating any confidential information pertaining" to the tribe. Id. at 883. In a subsequent lawsuit, the former employee, now the plaintiff, alleged the tribe's earlier lawsuit was "vexatious," in that it was "an attempt to extort money" and part of a larger "threat[] to disclose confidential information" about the former employee. Id. at 882-83. The bad faith purpose of the tribe's earlier lawsuit, the former employee alleged, was to "restrain [him] from making adverse comments [about the tribe] to relevant state authorities" while the tribe was "in need of regulatory approval in order to purchase various gambling enterprises in Pennsylvania." Id. at 883. The tribe moved to dismiss the former employee's lawsuit "because, absent consent or congressional abrogation, it enjoy[ed] sovereign immunity from suit in state court as a federally recognized Indian tribe." Id. The former employee "argued that the [tribe] had waived that immunity by having commenced the prior action against the plaintiffs in state court." Id. The Connecticut Supreme Court agreed with the tribe "that, in bringing the prior action in state court, it consented only to the adjudication of the merits of that action, and not to the adjudication of any subsequent state court claims." Id. at 883-84.

"In its prior action," the court explained, the tribe "necessarily consented to the state court adjudication of its affirmative claims, including any special defenses

22

and recoupment counterclaims related thereto." Id. at 886. However, "[t]hat consent to the adjudication of its affirmative claims did not . . . constitute a blanket waiver of its tribal sovereign immunity in the prior action, let alone in any subsequent action." Id. Applied to the former employee's allegations of vexatious litigation, threats, and extortion, the court held that his "present claim, which alleges that the defendant's prior action constituted vexatious litigation, neither falls within any valid exception to nor constitutes a waiver of the broad tribal sovereign immunity federal law affords to Indian tribes." Id. In response, the former employee, too, appealed to the court's "reason and simple fairness." Id. at 887. "Neither reason nor fairness," the Connecticut Supreme Court concluded, "permits us to disregard the well established doctrine of tribal sovereign immunity." Id. at 887.

We are persuaded by Beecher. First, its reasoning is consistent with the United States Supreme Court and federal appellate court cases that have applied immunity and found no waiver even where the results are deeply troubling, unjust, unfair, and inequitable. Beecher, likewise, is consistent with the federal case law that the tribe's immunity waiver in one suit does not waive immunity in a second suit arising out of the same subject matter. If the unfairness and inequity of a tribal employee negligently killing or battering someone is not enough to waive

23

immunity,[6] it follows that allegations of vexatious and bad faith litigation are also not enough to waive or abrogate it.

Second, we are persuaded by Beecher because we cannot find a single case, and none has been cited to us, holding that litigation conduct in one lawsuit is a clear, explicit, and unmistakable waiver of tribal immunity in a subsequent, related lawsuit. In all the cases that have been brought to our attention, the Indian tribe explicitly waived immunity in that case, or the tribe's active participation in litigation waived immunity in the case in which they participated, and not a subsequent case.[7] The tribe's waiver in one case – whether by explicit waiver or

---

[6] See, e.g., Furry v. Miccosukee Tribe of Indians of Fla., 685 F.3d 1224 (11th Cir. 2012) (finding tribal immunity where tribal employees knowingly overserved alcohol to casino patron and watched her get into her car intoxicated, resulting in the patron's death in an automobile accident); Miller v. Coyhis, 877 F. Supp. 1262 (E.D. Wis. 1995) (finding tribal immunity where one tribal employee assaulted and battered another).

[7] See Rupp v. Omaha Indian Tribe, 45 F. 3d 1241, 1244 (8th Cir. 1995) (the "Tribe's act of filing suit to quiet title in the disputed lands, combined with explicit language found in its complaint and its explicit waiver of immunity with respect to the counterclaims during the pendency of its suit, constitute[d] an express and unequivocal waiver of the Tribe's sovereign immunity"); Confederated Tribes of the Colville Reservation Tribal Credit v. White (In re White), 139 F.3d 1268, 1271 (9th Cir. 1998) (tribal agency filing collection action in the bankruptcy case waived immunity in that bankruptcy case); United States v. James, 980 F.2d 1314, 1320 (9th Cir. 1992) (tribe having affirmatively provided documents in case, it waived immunity with regard to those documents in that case); United States v. Oregon, 657 F.2d 1009, 1014 (9th Cir. 1981) (tribe waived sovereign immunity by intervening in the case and consenting to litigate all disputes in federal district court); Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP, 230 F. Supp. 3d 904 (N.D. Cal. 2017) (Indian tribe sued under federal Lanham Act and was therefore liable for attorney's fees resulting from the same litigation); United States v. Snowden, 879 F. Supp. 1054, 1056 (D. Or. 1995)

active participation – does not represent a waiver in a subsequent case in the same litigation.

Applied here, the Miccosukee Tribe waived its sovereign immunity in Bermudez by participating in the litigation (giving the checks and check stubs to the Bermudezes), and in the first and second state court actions and the federal court action, by affirmatively litigating as the plaintiff. Because of the immunity waivers, the state and federal courts in those cases were entitled to sanction the Tribe for its litigation conduct – and they did. The immunity waivers in those four cases, however, do not extend to subsequent litigation, even if the subsequent case is related and arises out of the same facts. Where the prior litigation ends and the new case begins is the point that the waiver becomes unclear and not explicit. As in all the cases cited in footnote seven, the Tribe's conduct and active participation opened itself up to litigation in the same cases in which the conduct occurred and the participation happened – the Bermudez case, the first and second state court actions, and the federal court action – but it did not act as a clear, explicit, and unmistakable waiver in a subsequent case on the same subject matter, like this one.

**CONCLUSION**

(once tribe voluntarily appeared in court and complied with subpoena, it waive immunity with regard to those documents in the case in which the documents were subpoenaed); Cal. Valley Miwok Tribe v. Cal. Gambling Control Comm'n, No. D068909, 2016 WL 3448362, at *2 (Cal. Ct. App. June 16, 2016) (tribe liable to pay costs in lawsuit that it brought against state agency).

It is a "settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." Marbury v. Madison, 5 U.S. 137, 147 (1803). Lewis and Tein had a right not to have their reputations ruined and their business destroyed by the Tribe. Like any injured party, if the allegations are true they should have proper redress for their injuries. But just as every right has its remedy, every rule has its exception. The exception here is sovereign immunity. Granting immunity to Indian tribes is a policy choice made by our elected representatives to further important federal and state interests. It is a choice to protect the tribes understanding that others may be injured and without a remedy. The immunity juice, our federal lawmakers have declared, is worth the squeeze. Still, some suffer from the squeezing, including car accident victims, beaten detainees, and Lewis and Tein. We can only respond by repeating the words of Justice O'Connor in the Three Affiliated Tribes case:

> The perceived inequity of permitting the Tribe to recover from a non-Indian for civil wrongs in instances where a non-Indian allegedly may not recover against the Tribe simply must be accepted in view of the overriding federal and tribal interests in these circumstances, much in the same way that the perceived inequity of permitting the United States or North Dakota to sue in cases where they could not be sued as defendants because of their sovereign immunity also must be accepted.

Three Affiliated Tribes, 476 U.S. at 893. Because the Tribe did not clearly, unequivocally, and unmistakably waive its immunity as to this case, we reverse the

26

trial court's order and remand for the trial court to grant the Tribe's motion to dismiss on sovereign immunity grounds and dismiss the case as to the Tribe.

Reversed and remanded with instructions.